IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SAM L. PETTERSON,

        Petitioner,

    v.

DAVE WILSON,

        Respondent.

Case No. 6:17-cv-01536-JE

FINDINGS AND RECOMMENDATION

Sam L. Petterson
#16262480
Oregon State Correctional Institution
3405 Deer Park Drive SE
Salem, Oregon 97310-9385

    Petitioner, *Pro Se*

Ellen F. Rosenblum, Attorney General
Samuel A. Kubernick, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

1 - FINDINGS AND RECOMMENDATION

                Attorneys for Respondent

JELDERKS, Magistrate Judge.

   Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his Marion County convictions dated August 5, 2010. For the reasons that follow, the Petition for Writ of Habeas Corpus (#2) should be denied.

                          **BACKGROUND**

   In 2010, the Marion County Grand Jury indicted Petitioner on thirteen counts of Using a Child in a Display of Sexually Explicit Conduct, six counts of Encouraging Child Abuse in the First Degree, one count of Unlawful Sexual Penetration in the First Degree, and one count of Sexual Abuse in the First Degree for crimes involving Petitioner's seven-year-old step-daughter. Respondent's Exhibit 103. At that time, Petitioner was facing additional criminal charges in two other cases that did not involve his step-daughter. In order to resolve all charges against him, Petitioner elected to plead guilty to three counts of Encouraging Child Sexual Abuse in the First Degree, one count of Unlawful Sexual Penetration in the First Degree, and one count of Sexual Abuse in the First Degree in Case No. 10C41447. He admitted to a violation of his probation which pertained to a prior Kidnapping conviction in Case No. 05C54338, and pled guilty to one count of Sexual Assault of an Animal in Case No. 10C42510. Respondent's Exhibits 105-107. The State dismissed the remaining charges, agreed to cap sentencing at 600 months, and the parties

        2 - FINDINGS AND RECOMMENDATION

stipulated that Petitioner would be able to argue for a 300-month sentence.

The trial court accepted Petitioner's pleas and imposed a sentence totaling 517 months in prison as well as a lifetime of post-prison supervision. Respondent did not take a direct appeal, and proceeded to file for post-conviction relief ("PCR") in Marion County where the PCR court denied relief on a variety of ineffective assistance of counsel claims. Respondent's Exhibit 139. The Oregon Court of Appeals affirmed that decision without issuing a written opinion, and the Oregon Supreme Court denied review. *Petterson v. Hall*, 284 Or. App. 314, 391 P.3d. 1005, *rev. denied,* 361 Or. 543, 397 P.3d 33 (2017).

Petitioner filed this 28 U.S.C. § 2254 habeas corpus case on September 28, 2017. In his Petition for Writ of Habeas Corpus, he raises a single ground for relief containing 25 sub-claims. Respondent asks the Court to deny relief on the Petition because: (1) Petitioner failed to fairly present most of his claims to Oregon's state courts, leaving them procedurally defaulted; and (2) the PCR court's decision as to Petitioner's preserved claims was not objectively unreasonable.

## DISCUSSION

### I. Exhaustion and Procedural Default

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the

3 – FINDINGS AND RECOMMENDATION

exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore*, 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, (1986)).

If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Castille v. Peoples*, 489 U.S. 346, 351 (1989). In this respect, a petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

In his PCR Petition, Petitioner raised a variety of ineffective assistance of counsel claims including many *pro se* claims. Respondent's Exhibit 112. However, in his PCR Appellant's Brief, he narrowed his claims considerably to the present just

the following question: "Where a criminal defendant pleads guilty to several sexual offenses, would a criminal defense trial attorney exercising reasonable professional skill and judgment obtain a psychosexual evaluation of the defendant in preparation for sentencing?" Respondent's Exhibit 140, p. 7. This claim best corresponds to sub-parts One and Two of the Petition in this case. Petitioner did not present the Oregon Court of Appeals or the Oregon Supreme Court with his remaining claims found in sub-parts three through twenty-five of his Petition. In this respect Petitioner failed to fairly present sub-parts three through twenty-five to Oregon's state courts, leaving them procedurally defaulted.

Petitioner does not dispute that his appellate briefing did not contain sub-parts three through twenty-five, but asks the Court to excuse his procedural default on several bases. First, he argues that at the appellate level, he was not able to raise *pro se* claims that his attorney did not raise, and maintains that he should not be punished by way of procedural default based upon counsel's winnowing of the issues without client consent. In this respect, Petitioner appears to reason that where he could not raise the claims he wished to litigate, there was no available state corrective process to protect his rights. *See* 28 U.S.C. § 2254(b)(1)(B)(i) (excusing exhaustion in the absence of state corrective process)

Pursuant to ORAP 5.92(1), Petitioner could have sought leave to file a supplemental *pro se* appellant's brief but he did not avail himself of this opportunity. Even if he had, and further

5 - FINDINGS AND RECOMMENDATION

assuming the Oregon Court of Appeals had not been receptive to such a motion, Petitioner could have chosen to proceed *pro se* in order to present all of his preferred claims. In short, Petitioner's disagreement with his appointed attorney about which claims to raise during a PCR appeal does not render Oregon's state corrective process ineffective so as to excuse the exhaustion requirement.

Petitioner next contends that the Oregon Rules of Appellate Procedure precluded him from raising the claims he wished because they forbid briefs from exceeding 10,000 words, and his attorney used 3,412 words just to argue the claims in sub-parts One and Two of his Petition for Writ of Habeas Corpus. He therefore reasons that it was impossible for him to argue the other twenty-three sub-claims. It was not necessarily impossible for Petitioner to raise the remainder of his claims within the confines of Oregon's procedural rules but, even if it was, Petitioner could have sought leave to file an overlength brief (which he did not do).

Petitioner also maintains that he was only required to exhaust his claim, which he identifies as ineffective assistance of trial counsel, and not the specific arguments underlying that claim. This argument is unavailing because ineffective assistance of counsel claims are discrete and must be properly raised in order to avoid procedural default. *Carriger v. Stewart*, 971 F.2d 329, 333-34 (9th Cir. 1992), *cert. denied*, 507 U.S. 992 (1993).

Finally, Petitioner asserts that the Court should excuse his default because he was the victim of ineffective assistance of

6 – FINDINGS AND RECOMMENDATION

PCR appellate counsel. Inadequate assistance of PCR counsel may establish cause to excuse the default of a substantial ineffective assistance of trial counsel claim. *Martinez v. Ryan*, 566 U.S. 1, 4 (2012). However, the holding of *Martinez* does not apply to claims involving the alleged errors of appellate counsel, and only applies to the performance of a PCR attorney during the initial level of collateral review. *Davila v. Davis*, 137 S.Ct. 2058 (2017). Petitioner is therefore unable to excuse his default of sub-claims Three through Twenty-Five.

## II. The Merits

### A. Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. Twenty-eight U.S.C. § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Twenty-eight U.S.C. § 2254(d)(2) allows a petitioner to "challenge the substance of the state court's findings and attempt to show that those findings were not supported by substantial evidence in the state court record." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012). A federal habeas court cannot overturn a state court decision on factual grounds "unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). This is a "'daunting standard—one that will be satisfied in relatively few cases,' especially because we must be 'particularly deferential to our state-court colleagues.'" *Hernandez v. Holland*, 750 F.3d 843, 857 (9th Cir. 2014) (quoting *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004)).

B.  <u>Analysis</u>

8 – FINDINGS AND RECOMMENDATION

In his remaining claims, Petitioner alleges that his trial attorney was constitutionally ineffective when he failed to: (1) demand that the trial court require Petitioner to submit to a psychosexual evaluation within 30 days of his indictment as required by ORS 137.767; and (2) have Petitioner submit to an independent psychosexual evaluation prior to entry of his plea and sentencing. In his briefing, Petitioner argues these claims in combination, and " focuses here only on whether trial counsel was ineffective in failing to seek a psychosexual evaluation to submit as mitigating evidence for the sentencing court's consideration before imposing sentence." Memo in Support (#49), p. 12.

The Court uses the general two-part test established by the Supreme Court to determine whether Petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, Petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, Petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether Petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694.

9 – FINDINGS AND RECOMMENDATION

A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. at 122.

During Petitioner's sentencing, the trial judge noted that although there was no psychosexual report in the record, given her extensive experience with such reports as well as the duration, nature, and breadth of Petitioner's offenses, the circumstances surrounding his crimes "would certainly suggest that you are at high risk for re-offense in the community." Respondent's Exhibit 109, p. 18. During his PCR proceedings, Petitioner alleged that his trial attorney was ineffective for failing to obtain a psychosexual evaluation and, had counsel done so, there is a reasonable probability that he would have received a more favorable sentence. To support this claim in his PCR proceedings, he retained licensed psychologist Dr. Kevin McGovern who developed a favorable evaluation:

> At the time of this assessment, Mr. Petterson did not appear to be predisposed or prone to engage in deviant sexual behavior. He was not clinically immobilized by a sexual disorder, a major mental illness or a pervasive personality disorder. It appears that his aberrant sexual behavior occurred for a very brief period of time and was confined to one victim, his step-daughter. At the time of his sentencing in Marion County approximately four years ago, he reported that he was [a] highly motivated candidate to successfully complete a sexual offender treatment program

> after he was released from prison in order to address his thinking errors that occurred for a very brief period of time. He reported that he had a strong desire to change his life and behave appropriately. Mr. Petterson realized that he had developed some thinking errors and dysfunctional behaviors that needed to be addressed when he was sentenced to prison. Obviously, these thinking errors and imprudent behaviors led to his arrest and long-term incarceration. However, these deficiencies could be both addressed and corrected through his enrollment and successful completion of a sex offender treatment program. Most clinicians would concur that at the time of his sentencing that the probability of a re-offense remained extremely low, close to zero, especially if he completed a sex offender treatment program. The recidivism rates for adjudicated sex offenders who successfully complete a sex offender treatment program are extremely low, especially if the sexual offenses occur within a family setting.

Respondent's Exhibit 123, p. 7.

The PCR record also contained a Declaration from Petitioner's trial attorney. According to counsel, he and Petitioner discussed whether to seek a psychosexual evaluation and mutually "agreed that such an evaluation would not necessarily be favorable." Respondent's Exhibit 130, p. 2. Counsel recounted:

> I explained that a psychosexual evaluation requires the subject to disclose his complete sexual history to the examiner. I also explained that the history must be verified, usually by a full disclosure polygraph, or it will not be acceptable to the District Attorney. I believe Mr. Petterson was concerned about what else might be disclosed (as was I) if he had a psychosexual evaluation.

11 - FINDINGS AND RECOMMENDATION

*Id.*

In addition to counsel's Declaration, the State also introduced significant evidence that Dr. McGovern's evaluation was inherently unreliable. Dr. William W. Davis, a clinical and forensic psychologist, opined that Dr. McGovern's report failed to comply with the guidelines and best practices established by the Association of Treatment of Sexual Abusers. Respondent's Exhibit 134. Dr. Davis provided specific detail as to exactly why Dr. McGovern's report was deficient, including the following:

> most of the body of the report contained information which would normally be classified as "self-report" supplied by the subject of the evaluation. The majority of the psychological instruments used were also self-report in nature. There appeared to be little effort made to corroborate the subject's version of events through other sources. In several instances data from police reports including statements by his spouse and others who were related to the subject in some way contradicted the subject's version of events. For example, the subject tried to tell Dr. McGovern that his wife was drunk and he was trying to keep her off the road when he assaulted her in 2005. There was no mention of alcohol in the police report or his own statement to the arresting officer.
>
> It was also noted that Dr. McGovern did not provide a list of corroborative documents in his report, as is customary.
>
> It was further noted by this evaluator that Dr. McGovern did not report an effort to confront those contradictions with the subject in an effort to reconcile the data in official reports with his statements.

> The case was presented as a simple incest case with little attention being given to other sexually deviant behavior reported, such as hidden cameras in a family bathroom going back to a time during a prior relationship; orchestrated and recorded sexual contact with a dog by his wife in which he was reported to have participated as well; and the dynamics of his behavior in contacting several couples for sexual conversations about "taboo" subjects through Craigslist; etc.
>
> * * * * *
>
> It is the opinion of this writer, as demonstrated above, that Dr. McGovern's report does depart from the mentioned authorities. The data and the methodology are not sufficient to reliably come to the conclusions which are asserted in the report.

*Id* at 3-4.

Although Dr. McGovern considered his report to be reliable, he admitted during his deposition that he: (1) did not review the photographic and video evidence that contradicted material portions of what Petitioner claimed occurred with the victim; (2) had done nothing to verify that what Petitioner was telling him was true; and (3) largely reiterated in his report what Petitioner told him. Respondent's Exhibit 133, pp. 33-40. Faced with the totality of this record the PCR court concluded, "not getting a psychosexual was not inadequate. Based on the readings of the two psych reports that were prepared for this case, there is insufficient evidence that an evaluation would have been helpful." Respondent's Exhibit 138, pp. 98-99.

Petitioner argues that counsel had a duty under clearly established federal law to investigate mitigation evidence to

present at sentencing, and that the PCR court's decision was objectively unreasonable because Dr. McGovern's favorable evaluation might have convinced the trial judge to impose a sentence of less than 517 months, especially where she was of the opinion that Petitioner was likely to re-offend in the community when she sentenced him. In making this argument, however, Petitioner overlooks the significant doubt Dr. Davis cast over Dr. McGovern's report. The PCR court determined that in light of the opinions expressed both by Dr. McGovern and Dr. Davis, Petitioner failed to establish that an evaluation would have been helpful to him. This was not an unreasonable determination based upon the totality of the record. Where Petitioner failed to establish that his counsel's performance fell below an objective standard of reasonableness, Petitioner is not entitled to habeas corpus relief.

## CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#2) should be denied and a judgment should be entered dismissing this case with prejudice. The Court should decline to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due within 17 days. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

///

///

///

///

///

///

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this  9th  day of June, 2020.

                                      /s/ John Jelderks
                                 _____
                                    John Jelderks
                                    United States Magistrate Judge